McCOWN v. KING.

1. Deeds and other papers must, under the rules of law, be so construed as to reach the intention of the parties.
2. Under a deed to A "to have and to hold to A, his heirs and assigns forever," followed by the warranty clause, and concluding "in trust nevertheless for the benefit of the heirs of his body, and not subject to any debts now or hereafter to be contracted by him, and at his death to be equally divided between the heirs of his body," A took no express grant of a beneficial interest in the land, but he was simply a trustee.
3. Clauses of a deed may be transposed in order to arrive at the intention of the grantor.
4. A gift to the heirs of the body of A without a gift of a prior estate to A, makes these words, "heirs of the body," to be words of purchase and not of limitation.
5. There was in this deed no express gift to A, and if there was any estate at all in A by implication, it was only an estate for his life.

Before Witherspoon, J., Darlington, October, 1884.

This was an action by G. J. McCown against Mary E. King and others, heirs at law of James King, deceased, commenced in May, 1883. The opinion states the case.

*Messrs. Ward & Nettles*, for appellants, cited *Will. R. Prop.*, 251; 2 *Wash. R. Prop.*, 270; 18 *Am. Rep.*, 593; 68 *Ill.*, 594; 4 *Burr.*, 2529; 3 *Rich. Eq.*, 158; 2 *DeSaus.*, 113; 1 *McCord Ch.*, 78; *Fearne Rem.*, 49; 1 *Strob. Eq.*, 346; 1 *Ves. & B.*, 456; 2 *Fearne Rem.*, 238; 5 *Ind.*, 283; 3 *Jarm. Wills*, 118; 5 *Strob.*, 134; 3 *Rich Eq.*, 574; 4 *DeSaus.*, 330, 630; 16 *S. C.*, 293, 311; *Bail. Eq.*, 49; 3 *Wash. R. Prop.*, 440.

*Messrs. Dargan & Dargan*, contra, cited 2 *Bl. Com.*, 381; *Harper*, 492; 2 *Pars. Cont.*, 513; *Pot. Dwar.*, 177; 11 *S. C.*, 75; 4 *Kent*, 468; 2 *Hill. Ch.*, 639; 3 *Strob. Eq.*, 66; 2 *DeSaus.*, 126.

July 15, 1885. The opinion of the court was delivered by

Mr. Chief Justice Simpson. There is but one question in this case, and that arises upon a deed of which the following is a copy, to wit:

"State of South Carolina, Darlington County.

"Know all men by these presents that I, William King, Sr., of State and district aforesaid, for and in consideration of the love and affection I bear my son, James King, as well as the sum of ten dollars to me paid, the receipt of which is hereby acknowledged, have granted, bargained, sold, and released, and by these presents grant, bargain, sell, and release unto the said James King that tract or parcel of land where he now resides [describing the land by metes and bounds], supposed to contain three hundred acres, more or less, together with all and singular the rights, members, hereditaments, and appurtenances to the said premises belonging or in any wise incident or appertaining; to have and to hold, all and singular, the said premises before mentioned, unto the said James King, his heirs and assigns forever. And I do hereby bind myself, my heirs, executors, and assigns to warrant and forever defend, all and singular, the said premises unto the said James King and his heirs against myself, my heirs, and against every person lawfully claiming, or to claim, the same or any part thereof. In trust, nevertheless, for the

benefit of the heirs of his body, and not subject to any debts now or hereafter to be contracted by him, and at his death to be equally divided between the heirs of his body.

"Witness my hand and seal this the twenty-ninth day of January, one thousand eight hundred and sixty, and the eighty-fourth year of American independence.

"(Signed)     WILLIAM $\overset{\text{his}}{\underset{\text{mark.}}{\bowtie}}$ KING.

"Signed, sealed, and delivered in the presence of
"T. C. Law and Albert J. Law."

James King, the son, took possession under this deed; or, as it appears, he was already in possession at the execution of the deed, but how and upon what terms is not stated. He died in 1883, leaving the defendants, his heirs at law, in possession. During his life-time, a judgment was obtained against him by McCown & Bass, under which the land was sold, after first setting off a homestead of a portion thereof to said James King, which was not included in the levy and sale. At the sale, the plaintiff became the purchaser and received titles from the sheriff in 1882 for two hundred acres, more or less, levied on and sold as the property of James King, under execution in favor of McCown & Bass.

Under these circumstances, the action below was brought by McCown for the possession of the land and for damages for un-lawfully withholding the same by the defendants. The defendants, taking the ground that James King acquired no interest under the deed aforesaid from his father through whom plaintiff claimed, offered no testimony on the trial. The case was heard by his honor, Judge Witherspoon, who, holding that James King had a leviable interest in the land under the deed from his father, which had been sold and purchased by the plaintiff, adjudged possession to plaintiff with costs. His honor did not state in terms in the decree pronounced by him the precise character of the estate which in his opinion had passed to James King under the deed in question. But he used the following language in reference thereto, to wit: "The defendants, as heirs of the body, can only claim the land by succession from their ancestor, James King, and in his right subject to his debts," from which the ap-

pellants have assumed, in their grounds of appeal, that his honor held that James took a fee thereunder, which no doubt was the construction placed by Judge Witherspoon on said deed.

The appeal raises the single question of the interest of James King under this deed. It is admitted that the execution of McCown & Bass was levied on this land as the property of James King, that plaintiff was the purchaser at sheriff's sale, and that he has the sheriff's deed conveying the same to him. But appellants controvert the construction of the Circuit Judge of the King deed and seek to have it reversed, claiming that his honor, instead of holding that James King took a fee to himself, should have held (in the language of the fourth exception) "that James took an estate in the land conveyed by the deed from William King *in trust for his children*, and that he had no other interest whatever therein."

The object of construction as to deeds—in fact, as to all papers in contest before the courts—is to reach the intention of the parties, because it is this which must control; otherwise the contract would be the contract of the court and not of the parties. The ascertainment, however, of this intention is not to be had by conjecture, or by what seems to be natural justice, or what the court would have done under the circumstances, but it must be had by the application of the rules of construction laid down in the books, and which the wisdom of the past has established as the best means of reaching the true meaning and intent of such papers. Whatever the application of these rules evolves, nothing more, nothing less, must be regarded and declared to be the intent of the matter under construction, whether it be in consonance with our notions of what it ought to be or not. Now, the application of these rules to the deed in question, we think, results in a different conclusion from that reached by the Circuit Judge.

Take the deed as a whole, and seek the intention of the grantor (William King) through the language employed when reading it as an entirety, and there is no beneficial interest, either equitable or legal, conveyed to James King, as far as we can see; on the contrary, he seems to be expressly excluded by the expression that in no event is the property to be made liable

for his debts now or hereafter to be contracted. The deed is somewhat inartificially drawn, in the fact that the trust clause is separated from the granting clause by the interposition of the warranty ; but this may have been, and no doubt was, accidental; yet the deed must be read as a whole, giving effect to each part, but in general harmony if possible. Now, to do this, let the trust clause be attached to the granting clause, and read in connection therewith. It will then read as follows : "Have granted, bargained, sold, and released, and by these presents grant, bargain, sell, and release unto the said James King that tract or parcel where he now resides, &c., to have and to hold all and singular the said premises mentioned unto the said James King, his heirs and assigns for ever. In trust, nevertheless, for the benefit of the heirs of his body, and not to be subject to any debts now or hereafter to be contracted by him, and at his death to be equally divided between the heirs of his body."

When thus read, and it is legitimate to transpose these clauses in this way, there is certainly no beneficial interest expressly conferred or conveyed to James King, but the estate is in trust for the heirs of his body, he being made the trustee simply. Suppose the language had been to James King, his heirs and assigns for ever, in trust, nevertheless, for the benefit of his children, and at his death to be equally divided between his children, could it be successfully contended in such a case that he would take a fee subject to his debts? We think not. Would he be entitled to any beneficial interest under such a deed ? Could such a deed be construed in any other way than as conveying the estate (whatever it might be) directly to the children through the operation of the statute of uses (there being nothing for the trustee to do) in common until his death, then to be divided equally between them ?

Now, can the words "heirs of the body," as used here, be properly construed to mean children, and therefore intended as words of purchase, indicating who were to take under and by virtue of the deed, or must they be understood as defining the quantity of the estate granted to James King, and, therefore, as words of limitation ? These words, when used in the latter sense, to wit, of words of limitation defining the quantity of an

estate, always follow and are attached to terms granting an estate to the ancestor, as where an estate is given to one and the heirs of his body. Here these terms are words of limitation and indicate that the grantee takes a fee conditional at common law. In other words, they are used for no other purpose but to point out how much and what quantity of the fee has been given to the grantee. So, too, under the rule in *Shelley's Case*, where an estate is given to one for life, then to the heirs of his body, these terms have been held to enlarge the life estate to a fee conditional, being regarded as words of limitation instead of purchase. But where they are not attached to the grant of a previous estate the quantity of which is to be ascertained, there is nothing for them to operate upon, and it cannot be said that in such case they were used as words of limitation.

Now, in the case before the court, could these words have been used to define the quantity of an estate given to James King? Before thus concluding, we must see that a beneficial estate of some kind was intended for him in the deed. Was there any such estate intended for him? By the terms of the deed a full fee is conveyed to James, the words heirs and assigns forever being used, but this was certainly not for his benefit, because, if so, why afterwards was the term heirs of the body used, words which, if used in connection with the estate granted to James, would cut down the fee already granted to him to a fee conditional? There is certainly no estate expressly granted to James, the quantity of which might be ascertained under the light of these words. There is no express estate to him and the heirs of his body, nor is there an express estate to him for life, and then to the heirs of his body, either of which would be a fee conditional, the first under the general law, and the other under the rule in *Shelley's Case*. But the estate is to him in fee absolute, in trust, however, *for the heirs of his body*.

There, then, being no beneficial estate to James in express terms to which these words, "heirs of the body," could be attached indicating its quantity, can an estate be raised in him by implication? This must have been the theory of the decree. Inasmuch as the deed directed that no division of the estate between the heirs of the body should take place until the death of

James, and no express grant thereof during the life of James awaiting the final division at his death; and inasmuch, further, as the fee was conveyed to James, there is some ground for the position that the grantor intended that he, James, should enjoy the estate for his life, and then, at his death, the division was to be made between the heirs of his body. Under this view the deed would be read as follows, to wit, to James during his life, and at his death to be equally divided between the heirs of his body. We do not think that this is the proper construction of the deed; but concede that it is, what would be the result as to the quantity of the estate to which James would be entitled? Under the rule in *Shelley's Case,* as we have seen, where an estate of freehold is given to the first taker as an estate for life, and then to the heirs of his body, with nothing more, these latter words would be construed as words of limitation and not of purchase, and the first taker would take a fee conditional, which would be subject to his debts.

But it is said in several cases, it is always open to inquiry whether the words "heirs" or "heirs of the body" are used in their proper technical sense, or in a more inaccurate sense, to denote children, issue, or next of kin. *Bailey* v. *Patterson,* 3 *Rich. Eq.,* 158; 2 *Jarm. Wills,* 13. And this rule does not apply if enough can be found in the deed to show clearly that the grantor did not intend the words heirs of the body as words of limitation defining the quantity of the estate to the first taker, but that he intended them as words of purchase, indicating that the heirs of the body were to take directly under the deed, and not by succession or inheritance. *Holeman* v. *Fort,* 3 *Strobh. Eq.,* 66; *Darbison* v. *Beaumont,* 1 *P. Wms.,* 230; *Thomas* v. *Bennet,* 2 *Id.,* 340; *Simms* v. *Garrot,* 1 *Dev. & Batt. Eq.,* 393; *Bailey* v. *Patterson,* 3 *Rich. Eq.,* 158, *supra.*

Now, we think that the term "heirs of the body," as used in this deed, even though a life estate be determined to James, was not used in their technical sense as words of limitation, but was used in the sense of children, and was intended to denote a class of persons who were to take as purchasers. In the case of *Bailey* v. *Patterson,* where Ch. Dunkin, who decided the case on Circuit, and who held that the words "heirs of the body" there

meant children, said: I think the words "to be equally divided among them" also indicate that the words were used in their ordinary, and not technical, sense.   The Appeal Court, *per curiam*, concurred.   So that, whether we construe this deed as a conveyance directly to the heirs of the body of James, executed through James by the statute, or as creating by implication a life estate to him, and then to the heirs of his body, to be equally divided between them at his death, it was error on the part of the Circuit Judge to hold that James had a fee which passed to the plaintiff by his purchase at sheriff's sale.   In no event could he have taken more than a life estate, and admitting that this passed to the plaintiff by his purchase, yet James having died before this action, the plaintiff would have no standing in court by virtue of that interest.

It is the judgment of this court that the judgment of the Circuit Court be reversed.